**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH O'NEIL,<br><br>        Plaintiff,<br><br>    v.<br><br>COMCAST CORPORATION, *et al.*,<br><br>        Defendants. | Case No. 18 C 4249<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth O'Neil brings this putative class action on behalf of herself and other similarly situated individuals. Plaintiff alleges that Defendants Comcast Corporation and Comcast Cable Communications failed to protect her personal information, resulting in identity thieves accessing that information and purchasing cell phones in her name. Plaintiff claims Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, breached an implied contract, and unjustly enriched themselves. Defendants move to compel arbitration and stay this action in its entirety during the pendency of any resulting arbitration proceedings. For the reasons stated herein, Defendants' Motion (Dkt. No. 21) is granted.

## I. BACKGROUND

Defendant Comcast Corporation ("Comcast") is a media and technology company. (Compl. ¶ 11.) Defendant Comcast Cable Communications ("Comcast Cable") is a wholly-owned subsidiary of Comcast. (Compl. ¶ 12.) Xfinity is a brand of Comcast Cable, used to market its consumer cable television, internet, telephone, and wireless services. (Compl. ¶ 13.) The Court will refer to Comcast, and Comcast Cable doing business as Xfinity Mobile, collectively as "Defendants."

Plaintiff Elizabeth O'Neil has a Xfinity account for wireless internet at her residence. In April 2017, Comcast created a new wireless service named Xfinity Mobile. (Compl. ¶ 16.) Plaintiff never added Xfinity Mobile services to her account. (Compl. ¶ 31.) In November 2017, Plaintiff was alerted that several cell phones she did not purchase herself had been charged to her Xfinity account and shipped to various addresses in the United States. (Compl. ¶ 30.) The phone purchases were processed in her name through Xfinity Mobile. (Compl. ¶ 31.) Similar unauthorized purchases in her name occurred a few months later. (Compl. ¶ 33.) Plaintiff ultimately expended significant time and resources resolving these fraudulent purchases with Comcast and reporting the incidents to local law enforcement. (Compl. ¶ 37.)

In June 2018, Plaintiff brought this lawsuit, claiming that Defendants used existing cable and internet subscribers' personal information—including payment information—to open Xfinity Mobile accounts without their knowledge or consent. Because of the lack of security measures, unauthorized users could easily access these accounts and then fraudulently purchase cell phones. (Compl. ¶ 36-38.) Plaintiff brings suit on behalf of herself and all other Comcast subscribers who had cell phones fraudulently purchased in their name, through an account they neither created nor had knowledge of. (Compl. ¶ 42.) Plaintiff brings three counts, arguing: (1) Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, by opening Xfinity Mobile accounts without subscribers' consent or knowledge, and failing to protect subscribers' personal information from unauthorized third parties; (2) Defendants breached an implied contract to reasonably safeguard subscribers' personal information; and (3) Defendants unjustly enriched themselves at the expense of Plaintiff and the putative class. (Compl. ¶ 6.)

Defendants assert that Plaintiff twice agreed to use arbitration for dispute resolution. Following installation of Comcast internet in her residence in November 2015, Plaintiff received a copy of Defendants' standard Subscriber Agreement.

(Comcast Agreement for Residential Services ("2015 Subscriber Agreement"), Ex. 2 to Ex. A to Defs.' Mot., Dkt. No. 21.) When Plaintiff signed a work order confirming the installation, she both acknowledged receipt of the 2015 Subscriber Agreement and agreed to be bound by it. (Defs.' Mot. at 2-3, Dkt. No. 21.) In August 2017, Comcast updated the 2015 Subscriber Agreement. (Comcast Agreement for Residential Services ("2017 Subscriber Agreement"), Ex. 3 to Ex. A to Defs.' Mot., Dkt. No. 21.) Comcast sent Plaintiff the 2017 Subscriber Agreement along with her August 2017 billing statement. (Defs.' Mot. at 4.) Both the 2015 Subscriber Agreement and its 2017 replacement contain terms requiring arbitration in the case of a dispute. The Court will refer to the arbitration terms in the 2017 Subscription Agreement collectively as "the arbitration provision." The following are the relevant terms of that Agreement:

> 1. The 2017 Subscriber Agreement states on the first page that it requires arbitration: "**Note: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS**…" (2017 Subscriber Agreement at 1 (emphasis in original).)
>
> 2. The arbitration provision states, "[a]ny dispute involving you and [Comcast] shall be resolved through individual arbitration." (*Id*. at § 13(a).)
>
> 3. "Dispute" is defined as "any dispute, claim, or controversy related to us or our relationship, including but not limited to any and all: (1) claims for relief and theories for liability, whether based on contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims that arose before this or any

- 4 -

prior Agreement; (3) claims that arise after the expiration or termination of this Agreement; (4) claims that are the subject of purported class action litigation." (*Id*. at § 13(b).)

4. The arbitration provision waives all class actions and collective relief: "THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION…" (*Id*. at § 13(h).)

5. Subscribers have an opportunity to opt out of the arbitration requirement within thirty days of their first Xfinity service activation, with "no adverse effect" to the subscriber. (*Id*. at § 13(d).)

6. The 2017 Subscriber Agreement further provides that "[t]his Arbitration Provision shall be broadly interpreted." (*Id*. at § 13(b).)

Defendants now move to compel Plaintiff to pursue her claims in individual arbitration, and to stay this action during the pendency of any resulting arbitration proceedings, pursuant to the Federal Arbitration Act. 9 U.S.C. §§ 1-16.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA established a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted). Courts must "rigorously" enforce arbitration agreements according to their terms. *Id*. Whether parties have agreed to submit a particular dispute to arbitration is typically an issue

for judicial determination. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Such determinations are guided by, state law principles of contract formation. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Both Defendants and Plaintiff agree that Illinois law governs; the Court will thus analyze contract issues using Illinois law.

In *Zurich American Insurance Co. v. Watts Industries, Inc.*, 466 F.3d 577, 580 (7th Cir. 2006), the Seventh Circuit held that a party moving to compel arbitration must show that: (1) a written agreement to arbitrate exists; (2) the dispute at issue is within the scope of that agreement; and (3) the other party has refused to arbitrate. *Id*. The third requirement is satisfied since Plaintiff currently refuses to arbitrate. And it appears to the Court that a contract already exists between the parties: the 2017 Subscriber Agreement. The parties, however, disagree over the validity and scope of that Agreement. Accordingly, the Court will address the first two *Zurich* elements, and then consider Plaintiff's alternative argument that the arbitration agreement is unenforceable because it is unconscionable.

As a preliminary matter, the Court notes that Plaintiff appears to cite the 2015 Subscriber Agreement rather than the 2017 Subscriber Agreement, though the Court cannot be certain, as she uses only the vague term "Internet Agreement" and does not

reference a specific exhibit. (*See* Pl.'s Resp. at 8, 9, 12, Dkt. No. 33.) Regardless, the arbitration provision exists in both the 2015 and 2017 Subscriber Agreements, and Plaintiff does not dispute that she has agreed to such provisions. (Pl.'s Resp. at 1 ("Plaintiff does not dispute that she agreed to arbitrate her claims regarding her use of Comcast's internet service.").) Accordingly, the Court will note for the sake of accuracy when Plaintiff appears to cite the 2015 Subscriber Agreement, but the Court will base the following analysis on the 2017 Subscriber Agreement.

### III. <u>DISCUSSION</u>

#### A. Contract Formation

As the party seeking to enforce an alleged agreement to arbitrate, Defendants have the burden to establish a prima facie case that the agreement exists. *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 795 (7th Cir. 1999) (applying Illinois law). Thus, Defendants must establish the three required elements of contract formation: offer, acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). The first element is easily satisfied here. Under Illinois law, the test for an offer is "whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995).

The 2017 Subscriber Agreement constitutes an offer by Comcast to provide internet services to Plaintiff.

For acceptance to be valid, it must meet and correspond to the exact terms of the offer. *Morris v. Goldthorp*, 60 N.E.2d 857, 861 (Ill. 1945). Plaintiff contends that she did not accept the terms of the Subscriber Agreement, citing the following language in the 2015 Subscriber Agreement for support: "You will have accepted this Agreement and be bound by its terms if *you* use the Service(s) or otherwise indicate your affirmative acceptance of such terms." (2015 Subscriber Agreement § 1 (emphasis added).) Plaintiff argues that she did not accept the Subscriber Agreement because *she* did not use the Xfinity Mobile account from which her claims stem—a third-party imposter did. However, both the 2015 and 2017 Subscriber Agreement define "service(s)" to include Xfinity internet service. (*See* 2017 Subscriber Agreement at 1.) It is uncontested that Plaintiff used the Xfinity internet service after receiving the 2015 and 2017 Subscriber Agreements. Because she used the "service" to which these agreements refer, she accepted Defendants' offer according to its exact terms. *See Int'l Administrators, Inc. v. Life Ins. Co. of N. Am.*, 541 F. Supp. 1080, 1083 (N.D. Ill. 1982) (noting that an offer may be accepted by rendering performance). Plaintiff's argument against acceptance fails.

Finally, consideration is the bargained-for exchange of promises or performances. *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citation omitted). Defendants agreed to provide internet service to Plaintiff in exchange for Plaintiff paying all charges associated with that service. (2017 Subscriber Agreement at 1.) Thus, consideration is present. Defendants have made a *prima facie* showing that the 2017 Subscriber Agreement is a contract that binds Plaintiff. *See Liu*, 191 F.3d at 795. Plaintiff has failed to offer any evidence to counter Defendant's prima facie showing. *See id*. Accordingly, the 2017 Subscriber Agreement constitutes a written agreement to arbitrate. *Zurich,* 466 F.3d at 580.

## B. Contract Scope

Having found that a written agreement to arbitrate exists, the Court turns to the question of whether the dispute at issue is within the scope of that agreement. *Zurich*, 466 F.3d at 580. The Seventh Circuit has noted that although the FAA favors the resolution of disputes through arbitration, it is not to be construed so broadly as to include claims that were never intended for arbitration. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean*

*Witter Reynolds, Inc.*, 537 U.S. 79, 83, (2002) (citation omitted). *See, e.g., Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663-64 (7th Cir. 2002) (finding, in a case involving one contract for employment and another for the purchase and sale of a business, that the arbitration clause in the former did not extend to the latter). But where, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the "law's permissive policies in respect to arbitration" counsel that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (citation omitted). The Court cannot deny Defendants' request to arbitrate an issue unless it may be said "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citation omitted).

Plaintiff argues that the arbitration provision does not apply to her claims against Defendants because it only relates to internet services. To support this argument, Plaintiff cites to language in the 2015 Subscriber Agreement that states, "You will have accepted this Agreement and be bound by its terms *if you use the Service(s). . .*" (2015 Subscriber Agreement § 1 (emphasis added).) According to Plaintiff, this language unambiguously

requires arbitration *only* for the "services at issue"—and in this case, only Xfinity Mobile services are at issue. (Pl.'s Resp. at 9.) Plaintiff's interpretation belies the plain meaning of the quoted language. *See O'Rourke v. Access Health, Inc.*, 668 N.E.2d 214, 220 (Ill. App. Ct. 1996) (contract language must be interpreted according to its plain, ordinary, and popular meaning). As the Court has already explained, this provision establishes the conditions for accepting the contract, which Plaintiff did by continuing to use Xfinity internet services. It does not relate to the scope of the arbitration provision. This argument fails.

Plaintiff next argues her claims are outside the scope of the arbitration provision because her claims are "entirely unrelated" to her relationship with Comcast. (Pl.'s Resp. at 12.) However, the arbitration provision is quite broad in scope, including "any dispute, claim, or controversy *related to us or our relationship,* including but not limited to any and all… claims for relief and theories for liability, whether based on contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise. . ." (2017 Subscriber Agreement § 13(b) (emphasis added).) Plaintiff's Complaint reveals that her claims are related to her relationship with Defendants. Plaintiff essentially alleges that Defendants took advantage of their existing relationship with her when they

opened a mobile account in her name. All of Plaintiff's claims depend on the factual assertion that Defendants misused the personal information that she provided in connection with her Xfinity internet account. (*See, e.g.,* Compl. ¶ 68 (alleging that when Plaintiff provided Defendant her personal information for her Xfinity internet account, it created an implied contract whereby Comcast became obligated to safeguard her information).) Plaintiff's claims are inherently "related to" her "relationship" with Defendants, and thus are within the scope of the arbitration provision. (2017 Subscriber Agreement at § 13(b).)

Plaintiff additionally argues that the arbitration provision does not apply to an unforeseeable tort such as the theft of Plaintiff's personal information. Plaintiff cites several Florida and South Caroline state court decisions to support this claim. However, the Seventh Circuit has routinely held that a party may not avoid a contractual arbitration clause by casting its complaint in tort. *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993). Furthermore, Plaintiff specifically agreed to arbitrate all tort and fraud claims. (2017 Subscriber Agreement § 13(b).) This argument fails as well.

Plaintiff also raises a series of arguments centered on the assertion that she never signed a separate agreement pertaining specifically to Xfinity Mobile services. Plaintiff argues that

because she never entered into a "mobile services agreement" with Defendants, they cannot now require her to arbitrate claims arising from the unauthorized access of her Xfinity Mobile account. However, Defendants do not claim that such a contract exists. Rather, they argue that the arbitration provision in the 2017 Subscriber Agreement determines the outcome in this case. Therefore, Plaintiff's reliance on cases in which the plaintiff had no prior relationship with the defendant is misplaced. Plaintiff cites to *Maranto v. Citifinancial Services*, No. Civ.A. 05-0359, 2005 WL 3369948 (D. La. Nov. 18, 2005) and *Boran v. Columbia Credit Services*, No. 3:06CV806, 2006 WL 3388400 (D. Conn. Nov. 21, 2006). Both cases involved an identity thief who opened a credit card in the plaintiff's name—and in the process, signed an arbitration agreement in the plaintiff's name. This case is distinguishable from *Maranto* and *Boran* because here there is a contract between Plaintiff and Defendants that existed prior to the fraud. Plaintiff apparently views her Xfinity Mobile account as requiring a different contract with its own arbitration agreement. However, the Court need not resolve that argument because the Court has already found Plaintiff's claims to be within the scope of the arbitration provision in the 2017 Subscriber Agreement. Accordingly, Defendants have satisfied the three

requirements for a motion to compel arbitration. *Zurich,* 466 F.3d at 580.

### C. Unconscionability

In a final attempt to thwart arbitration, Plaintiff argues that the 2017 Subscriber Agreement is procedurally unconscionable as applied to her claims. Under Illinois contract law, an agreement may be unenforceable if it is procedurally unconscionable. *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011). Procedural unconscionability consists of "some impropriety during the process of forming the contract depriving a party of meaningful choice." *Id*. (citation omitted). It applies when a contract term is "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). Procedural unconscionability also takes into account a lack of bargaining power. *Id*.

Plaintiff first asserts that the 2017 Subscriber Agreement is procedurally unconscionable because it did not sufficiently alert her that claims involving third parties placing unauthorized orders in her name would be subject to arbitration. However, the first page of the 2017 Subscriber Agreement states in capital letters that it requires arbitration and directs the reader to where in the contract the arbitration provision can be found.

("**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13… THE ARBITRATION PROVISION REQUIRES THAT DISPUTES BE RESOLVED IN INDIVIDUAL ARBITRATIONS OR SMALL CLAIMS COURT PROCEEDINGS.**") (2017 Subscriber Agreement at 1 (emphasis in original).) The arbitration provision then states that it includes "any dispute, claim, or controversy related to us or our relationship." (*Id*. at § 13(b).) The arbitration provision is not "hidden in a maze of fine print"—it is conspicuously announced on the first page of the contract. *See Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980). Plaintiff does not otherwise claim that the terms of the arbitration provision were difficult to find, read, or understand, nor does she claim that she lacked bargaining power. Indeed, Plaintiff cannot claim that she was denied "meaningful choice," *Phoenix,* 949 N.E.2d at 647, because she could have opted out of arbitration pursuant to the 2015 Subscriber Agreement. (2015 Subscriber Agreement § 13(c).) Had Plaintiff chosen to opt out of arbitration in 2015, the 2017 Subscriber Agreement would have automatically carried forward that election. (2017 Subscriber Agreement § 13(d).) The presence of an arbitration opt-out clause "weighs heavily against" a finding of procedural unconscionability. *O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010

- 15 -

WL 4932665, *5 (N.D. Ill. Nov. 29, 2010). Plaintiff's argument fails.

Plaintiff also contends that the 2017 Subscriber Agreement is procedurally unconscionable because its arbitration provision has "unlimited scope." This argument, however, is more appropriately characterized as a claim of substantive unconscionability because it concerns the actual terms of the contract and the relative fairness of the obligations assumed. *See Phoenix*, 949 N.E.2d at 647. An agreement is substantively unconscionable when its terms are so one-sided as to oppress or unfairly surprise an innocent party. *Id*. Other factors include whether there is an overall imbalance in the obligations and rights imposed by the contract, and the presence of a significant cost-price disparity. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006).

First, the Court finds the arbitration provision is not "unlimited" in scope. It is confined to disputes regarding the parties' relationship. *See Zacher v. Comcast Cable Commc'ns LLC*, No. 17 CV 7256, 2018 WL 3046955, at *3 (N.D. Ill. June 20, 2018) (finding same). Second, as already discussed, Plaintiff had a meaningful opportunity to opt out of the arbitration requirement without repercussions. Such an option "weighs strongly against" finding substantive unconscionability. *O'Quinn*, 2010 WL 4932665,

at *5. Thus, the 2017 Subscriber Agreement is not substantively unconscionable.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Compel Individual Arbitration and Stay Litigation (Dkt. No. 21) is granted pursuant to 9 U.S.C. §§ 3, 4. Plaintiff shall comply with the written arbitration agreement in the 2017 Subscriber Agreement. This action is stayed in its entirety during the pendency of any resulting individual arbitration proceeding.

**IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

Dated: 2/27/2019